JULIA CATHERINE BOSEMAN, Plaintiff v. MELISSA ANN JARRELL, Defendant, and MELISSA ANN JARRELL, Third-Party Plaintiff v. JULIA CATHERINE BOSEMAN and THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, Third-Party Defendants

No. COA08-957

(Filed 18 August 2009)

## 1. Civil Procedure— Rule 60—relief from adoption decree—failure to exercise discretion

The trial court failed to exercise its discretion when it denied defendant's Rule 60(b)(4) motion for relief from a decree of adoption on the grounds that it did not have jurisdiction to declare void the order of another district court judge. Rule 60(b) motions are an exception to the general rule that one judge may not overrule, modify, or change the judgment of another.

## 2. Adoption— same sex—not void

A party to a same-sex adoption decree could not question its validity except by showing that it was void *ab initio*. The decree was not void, even if erroneous; the adoption was not explicitly a same-sex adoption and was better characterized as a direct placement adoption with a waiver of the full terms of parental consent and legal obligations. The statutes make clear that a wide range of adoptions are permitted so long as they protect the minor and the specific nature of the parties' relationship was not relevant; the same result would have been reached for an unmarried heterosexual couple.

**3. Declaratory Judgments— indexing adoption—moot**

A declaratory judgment claim by defendant concerning the Department of Health and Human Services' alleged refusal to index a non-stepparent adoption decree was erroneously dismissed for lack of jurisdiction, but the matter was moot because the adoption decree was not void and cannot be challenged by defendant. Moreover, the court did not err by ruling that plaintiff is a legal parent of the child.

**4. Adoption— custody—standard of proof—findings**

An argument in a proceeding challenging an adoption that plaintiff has standing to pursue custody was not reached because other findings fully supported the court's custody award. Also, an argument concerning the standard of proof for determining custody failed because it rested on the contention that plaintiff was not a parent, which was rejected above.

Appeal by defendant/third-party plaintiff from judgments entered 14 January 2008, 6 February 2008, 14 February 2008, 20 March 2008, and 16 April 2008 by Judge Lillian B. Jordan in the District Court in New Hanover County. Heard in the Court of Appeals 26 January 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Mabel Y. Bullock, for the North Carolina Department of Health and Human Services.*

*Lea, Rhine, Rosrugh & Chleborowicz, PLLC, by James W. Lea, III, Lori W. Rosbrugh, and Holi B. Newsome, for plaintiff/ third-party defendant-appellee.*

*Ward and Smith, P.A., by John M. Martin and Leslie G. Fritscher, for defendant/third-party plaintiff-appellant.*

*North Carolina Association of Women Attorneys, National Association of Social Workers, North Carolina Chapter of the National Association of Social Workers, and North Carolina Foster and Adoptive Parents Association, by Ellen W. Gerber, as amici curiae.*

BRYANT, Judge.

Defendant/third-party plaintiff Melissa Jarrell appeals from a custody order entered 14 January 2008 which granted joint legal custody

of a minor child to Jarrell and plaintiff/third-party defendant Julia Boseman, a partial summary judgment order entered 6 February 2008 which denied Jarrell's motion to declare void an adoption decree, an order entered 14 February 2008 which denied Jarrell's 12(b)(6) motion to dismiss, an order entered 20 March 2008 which denied Jarrell's Rule 60(b) motion for relief from the adoption decree, an order entered 20 March 2008 which denied Jarrell's 12(b)(1) motion, an order entered 16 April 2008 which dismissed her declaratory judgment claim challenging the validity of an adoption, and an order entered 16 April 2008 which amended the 14 January 2008 order. For the reasons stated below, we affirm in part, and vacate in part and remand.

Boseman and Jarrell were domestic partners in a relationship that began in August 1998. From the beginning, the two discussed their desire to have a child. As a result of artificial insemination, Jarrell gave birth to a child in October 2002. Both Jarrell and Boseman participated in the day-to-day care of the child. The child called Jarrell "Mommy" and Boseman "Mom" and is described as "happy, outgoing, respectful, intelligent, very athletic, friendly, delightful and kind to others." Jarrell's relationship with the child is described as hands-on, loving, and respectful. Boseman's is described as very attentive, loving, hands-on and fun. In 2004, the parties began to explore the option of Boseman adopting the child.

On 3 May 2005, Jarrell filed with the Durham County District Court Clerk a Motion for Waiver of Statutory Provisions by Biological Mother. The motion stated, in pertinent part:

> Melissa Ann Jarrell, the biological mother of [adopted child], hereby requests that the Court waive the statutory provisions established for the benefit of biological parents in N.C.G.S. 48-1-106(c) and N.C.G.S. 43-3-606(9) . . . . [and] Jarrell, the biological mother of adoptee herein, prays that the Court grant a waiver in this adoption of the statutory provisions stating that the consent of the biological mother should contain an agreement to terminate all her parental rights . . . .

In August 2005, a district court judge in the District Court in Durham County ("the adoption court"), filed an order which ruled that the provisions under N.C.G.S. §§ 48-1-106(c) and 48-3-606, requiring the termination of a biological parent's rights upon the adoption of the child, could be waived and that the consent form filed by Jarrell was sufficient for such a purpose.

Additionally, Jarrell filed a Form DSS-1802, Consent to Adoption by Parent Living With Petitioner. In doing so, Jarrell "voluntarily consent[ed] to the adoption of [the child] by petitioner, Julia Catherine Boseman" and "waive[d] [her] right to severance of the relationship of parent and child between [herself] and the minor child when this adoption is entered, so that the minor child shall have two legal parents, [herself and Boseman.]" Boseman petitioned the court for adoption of the minor child and, in a Motion for Waiver of Statutory Provisions by Petitioner, stated that she "seeks to adopt [the child] so that said child will have two legal parents . . . ." Moreover, Boseman requested "that the Court grant a waiver in this adoption of the statutory provisions stating that the consent of the biological parent should contain an agreement to terminate all her parental rights . . . ." On 26 August 2005, the adoption court entered a decree of adoption of the child by Boseman that "does not sever the relationship of parent and child between the individual adopted and that individual's biological mother. Further, the biological mother is not . . . divested of any rights with respect to the adoptee."

In 2005 and 2006, the parties spent significant time apart and eventually separated in May 2006. Despite Jarrell's acknowledgments that Boseman "is a very good parent who love[d] [the child]" and whom the child loved in return, Jarrell limited Boseman's contact with the child.

On 7 February and 20 April 2007, respectively, Boseman filed a complaint and amended complaint in the District Court in New Hanover County ("the trial court") seeking joint custody of the child. The complaint requests that Jarrell retain primary physical custody with Boseman having secondary custody in the form of liberal and extensive visitation. On 24 May, 17 July, and 25 October 2007, respectively, Jarrell filed a Rule 60(b)(4) Motion for Relief from Void Decree of Adoption, Rule 12(b)(1) Motion to Dismiss, Answer, Counter-claims, and Third-Party Class Action Complaint; an amended answer, counterclaims, and third-party class action complaint; and a second amended answer, counterclaims, and third-party complaint. In Jarrell's third-party complaint, she asserted that "the North Carolina Department of Health and Human Services [(the Department)] is the State Agency of the executive oversight of adoptions, including the indexing of final adoptions on the State's permanent retention system and the warehousing of sealed adoption records." Jarrell requested that the trial court "enter a Dec-

laratory Judgment declaring the legal effect of the Department's alleged refusal to index the non-stepparent adoption decree on this State's permanent retention system."

On 26 November 2007, the Department, as third-party defendant, answered Jarrell's third-party complaint requesting that Jarrell "have and recover nothing from [the Department]." On 29 November 2007, Jarrell, as third-party plaintiff, moved for partial summary judgment requesting that the trial court determine the adoption decree was void as a matter of law. On 10 December 2007, the trial court heard arguments based upon Boseman's complaint and Jarrell's counterclaim for custody of the child. On 14 January 2008, the trial court entered an order that "[Boseman] and [Jarrell] shall have joint legal custody of the minor child[,]" and, "[Jarrell] shall have primary physical custody . . . ." In its order, it also concluded that the "Decree of Adoption has not been found to be void . . . ."

On 6 February 2008, the trial court entered an order which denied Jarrell's motion for partial summary judgment to have the Adoption Decree declared void. As a basis, the order states that the trial court did not have jurisdiction to declare void an order or judgment of another district court entered in another judicial district in North Carolina. On 14 February 2008, the trial court entered an order which denied Jarrell's Rule 12(b)(6) motion to dismiss. On 20 March 2008, the trial court entered an order which denied Jarrell's Rule 60(b)(4) Motion for Relief from Void Decree of Adoption, stating that it did not "have jurisdiction to declare void an Order or Decree of another District Court Judge sitting in another judicial district in North Carolina." In another order entered 20 March 2008, the trial court denied Jarrell's Rule 12(b)(1) motion.

On 16 April 2008, the trial court entered an order in which it dismissed the declaratory judgment actions with respect to the validity of the adoption decree. Again, the basis for the ruling was that the court lacked jurisdiction "to declare void an Order or Decree of another District Court Judge sitting in another Judicial District in North Carolina."

On 16 April 2008, the trial court also amended its 14 January 2008 order and inserted the following finding:

27. [Jarrell] sought to have the Decree of Adoption declared void in this lawsuit. This Court sitting in New Hanover County,

North Carolina does not have jurisdiction to declare void an Order of another District Court Judge in another Judicial District in North Carolina.

From these orders, Jarrell appeals as both defendant and third-party plaintiff.

---

On appeal, Jarrell raises the following seven arguments: The trial court erred in (I) concluding that it lacked subject matter jurisdiction to set aside the order of another district court; (II) upholding an adoption decree that was void when entered; (III) dismissing the declaratory judgment action; (IV) ruling that Boseman was a legal parent of the minor child; (V) ruling that Jarrell acted inconsistently with her protected status as a natural parent; (VI) applying an incorrect standard of proof for determining custody; and (VII) denying Jarrell's Rule 12(b)(1) and 12(b)(6) motions.

### I and II

[1] Jarrell first contends that the trial court erred in denying her Rule 60(b)(4) motion on grounds that it did not "have jurisdiction to declare void an Order or Decree of another District Court Judge sitting in another Judicial District of North Carolina." We agree.

Appellate review of denial of a Rule 60(b)(4) motion is "limited to determining whether the court abused its discretion." *McLean v. Mechanic*, 116 N.C. App. 271, 276, 447 S.E.2d 459, 462 (1994), *disc. review denied*, 339 N.C. 738, 454 S.E.2d 653 (1995). While the general rule is that one judge may not overrule, modify or change the judgment of another, Rule 60(b) motions are an exception. *Trent v. River Place, LLC*, 179 N.C. App. 72, 79, 632 S.E.2d 529, 534 (2006). "Where a judge refuses to entertain such a motion because he labors under the erroneous belief that he is without power to grant it, then he has failed to exercise the discretion conferred on him by law." *Hoglen v. James*, 38 N.C. App. 728, 731, 248 S.E.2d 901, 903 (1978) (citing *Hudgins v. White*, 65 N.C. 393 (1871)). In *Hoglen*, we held that because the judge "erroneously believed he lacked the power to grant the relief requested, plaintiff . . . never had the proper hearing on his Rule 60(b) motion to which he is entitled." *Id.* at 731, 248 S.E.2d at 904. In that case, we vacated the order and remanded for a hearing so that the trial court could make the required findings of fact and rule on the plaintiff's order. *Id.*

BOSEMAN v. JARRELL

[199 N.C. App. 128 (2009)]

Here, the trial court denied Jarrell's motion under the misapprehension that it lacked the necessary jurisdiction to declare the adoption decree void. This constituted an abuse of discretion by a failure to exercise the discretion conferred by law and we vacate the trial court's Rule 60(b)(4) order. In order to expedite resolution of this matter in the best interest of the minor involved, we next address defendant's second argument: whether the adoption decree was in fact void.

**[2]** Jarrell moved for relief pursuant to Rule 60(b)(4), contending that the adoption decree entered by the District Court in Durham County ("the adoption court") was void *ab initio*. After careful review, we conclude that the adoption decree, even if erroneous or contrary to law, was not void.

We begin by noting that appeals from final orders of adoption have been severely restricted by our legislature:

> (a) Except as provided in subsections (b) and (c) of this section, after the final order of adoption is entered, no party to an adoption proceeding nor anyone claiming under such a party may question the validity of the adoption because of any defect or irregularity, jurisdictional or otherwise, in the proceeding, but shall be fully bound by the order. No adoption may be attacked either directly or collaterally because of any procedural or other defect by anyone who was not a party to the adoption. The failure on the part of the court or an agency to perform duties or acts within the time required by the provisions of this Chapter shall not affect the validity of any adoption proceeding.

N.C. Gen. Stat. § 48-2-607(a) (2005); *see also Hicks v. Russell*, 256 N.C. 34, 123 S.E.2d 214 (1961). Jarrell, a party to the adoption, cannot question its validity based on "any defect or irregularity, jurisdictional or otherwise." N.C.G.S. § 48-2-607(a). Therefore, the only avenue by which Jarrell can contest the adoption is to show that it was void *ab initio*, a legal nullity. "If a judgment is void, it is a nullity and may be attacked at any time. Rule 60(b)(4) is an appropriate method of challenging such a judgment." *Burton v. Blanton*, 107 N.C. App. 615, 616-17, 421 S.E.2d 381, 383 (1992) (internal citation omitted).

Our State's case law distinguishing void versus voidable judgments is easy to state, but often thorny to apply. "[D]ecrees are not void if the court which rendered them had jurisdiction." *Travis v.*

*Johnston*, 244 N.C. 713, 719, 95 S.E.2d 94, 99 (1956). "To have validity a judgment must be rendered by a court which has authority to hear and determine the questions in dispute and control over the parties to the controversy or their interest in the property which is the subject matter of the controversy." *Id.* at 719-20, 95 S.E.2d at 99. "In such case, *the judgment is not void even though it may be contrary to law*; it is voidable, but is binding on the parties until vacated or corrected in the proper manner." *Allred v. Tucci*, 85 N.C. App. 138, 142, 354 S.E.2d 291, 294 (emphasis added) (citing *Worthington v. Wooten*, 242 N.C. 88, 86 S.E.2d 767 (1955)), *disc. review denied*, 320 N.C. 166, 358 S.E.2d 47 (1987). "[E]rroneous judgments may be corrected only by appeal and Rule 60(b) motions cannot be used as a substitute for appeal." *Burton*, 107 N.C. App. at 617, 421 S.E.2d at 383. However, "[w]here jurisdiction is statutory and the Legislature requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain limitations, an act of the Court beyond these limits is in excess of its jurisdiction." *Eudy v. Eudy*, 288 N.C. 71, 75, 215 S.E.2d 782, 785 (1975), *overruled on other grounds by Quick v. Quick*, 305 N.C. 446, 290 S.E.2d 653 (1982). Despite this language, our courts have repeatedly rejected contentions that courts lack subject matter jurisdiction where statutory procedures and requirements are not met, particularly in juvenile proceedings. *See, e.g., In re J.T.*, 363 N.C. 1, 2, 672 S.E.2d 17, 17 (2009) (holding that the "failure to name a juvenile as respondent or to serve a summons upon the juvenile in accordance with N.C.G.S. § 7B-1106(a) . . . implicate[s] personal jurisdiction rather than subject matter jurisdiction").

Here, the parties essentially agree on the law as stated above, but differ in their portrayal of the actions of the adoption court. Jarrell argues that the adoption court "had no statutory authority to enter [a] same-sex Adoption Decree," and thus acted in excess of its jurisdiction. Boseman contends that the adoption court had subject matter jurisdiction to handle adoption proceedings involving North Carolina residents pursuant to the explicit terms of Chapter 48, and that any deviations from that Chapter's mandates are, at most, contrary to law. We must look to the language of Chapter 48 as an expression of our General Assembly's intent to determine whether the irregularities in the adoption here exceeded the adoption court's jurisdiction or were merely contrary to law.

Chapter 48 of our General Statutes covers adoptions and establishes subject matter jurisdiction in these special proceedings. The

version of section 48-2-100, titled "Jurisdiction," in force at the time of the adoption at issue here[1], provided, in pertinent part, that

> jurisdiction over adoption proceedings commenced under this Chapter exists if, at the commencement of the proceeding:
>
> (1) The adoptee has lived in this State for at least the six consecutive months immediately preceding the filing of the petition or from birth, and the prospective adoptive parent is domiciled in this State; or
>
> (2) The prospective adoptive parent has lived in or been domiciled in this State for at least the six consecutive months immediately preceding the filing of the petition.

N.C. Gen. Stat. § 48-2-100(b) (2005). Thus, statutory subject matter jurisdiction is determined by the residence of the parties to the adoption. In this case, Jarrell, Boseman and the minor child had all resided in Wilmington, North Carolina for at least several years prior to the adoption proceeding.

Jarrell counters that Chapter 48 does not permit "same-sex adoptions,"[2] and indeed that phrase appears nowhere in the chapter. Chapter 48 specifically addresses three basic types of adoptions of minors: 1) agency placements, in which the agency has obtained custody of the minor through parental relinquishment or the termination of parental rights; 2) direct placement of a child, in which "a parent or guardian . . . personally select[s] a prospective adoptive parent," either with or without the assistance of third-parties; and 3) adoptions by step-parents[3]. *See* N.C. Gen. Stat. §§ 48-3-202, 48-3-203, 48-4-101 (2009).

---

1. In 2007, the General Assembly amended this section to remove barriers to adoption of North Carolina children by residents of other states. The main portion of the amendment was to add a third manner for the court to obtain jurisdiction when "[a]n agency licensed by this State or a county department of social services in this State has legal custody of the adoptee." N.C.G.S. § 48-2-100 (b)(3) (2007). This amendment is unrelated to the facts before us here. *See* 2007 N.C. Sess. Laws 151.

2. For convenience, we will adopt the term "same-sex" adoption to refer to situations in which one member of a same-sex couple adopts the biological minor child of the other member of the couple.

3. The factual situation here may appear closest to the latter type of adoption, in which the intent of the biological parent is to maintain her parental rights while expanding the rights and responsibilities of parenthood to another adult already acting in a parental role. Indeed, defendant's "motion for waiver of statutory provisions by biological mother" specifies that in 2005 she sought adoption of the minor by plaintiff in order to provide the minor with "two legal parents." Section 48-4-101 allows a step-

BOSEMAN v. JARRELL

[199 N.C. App. 128 (2009)]

The parties here sought to arrange a direct placement adoption with certain variations from the relevant statutory provisions. Jarrell moved for the waiver required in such adoptions which provides that "the individual executing the consent understands that when the adoption is final, all rights and obligations of the adoptee's former parents or guardian with respect to the adoptee will be extinguished, and every aspect of the legal relationship between the adoptee and the former parent or guardian will be terminated[.]" N.C. Gen. Stat. § 48-3-606(9) (2009). In her motion to the adoption court, Jarrell explained that she wanted her child to have the benefits and protections of "two legal parents" and that obligating Boseman to provide these protections to her child was in the child's best interest and thus consistent with purposes of Chapter 48. The adoption court, after reviewing oral arguments, legal memoranda, a home study and other documents, agreed that the adoption would be in the minor's best interest, granted the waiver, and subsequently entered the decree of adoption. While the factual circumstances of the parties' relationship is discussed in the order granting the waiver, no mention of the parties sexual orientation is contained in the decree, which merely notes that the petitioner (Boseman) was a "single female." Thus, the adoption here was not explicitly a same-sex adoption; it is better characterized as a direct placement adoption with a waiver of the full terms of parental consent and legal obligations specified in N.C.G.S. §§ 48-1-106(c) and 48-3-606.

While we acknowledge that section 48-3-606 is titled "Content of consent; mandatory provisions," the intent and purpose of subsection (9) quoted above are to ensure that a biological parent or guardian is fully informed about the ramifications of adoption and are intended for the protection of that consenting individual, not the minor ("the individual executing the consent understands. . . ." N.C.G.S. § 48-3-606(9) (emphasis added). Similarly, under N.C.G.S. § 48-1-106(c), an adoption decree

> severs the relationship of parent and child between the individual adopted and that individual's biological or previous adoptive parents. After the entry of a decree of adoption, the former parents are relieved of all legal duties and obligations due from them to

parent to petition to "adopt a minor who is the child of the stepparent's spouse." N.C.G.S. § 48-4-101. However, Chapter 48 defines "stepparent" as "an individual who is the spouse of a parent of a child" and the parties here were never married to each other. See N.C.G.S. § 48-1-101(18) (2009). In addition, the adoption documents themselves refer to provisions involving direct placement adoptions.

the adoptee, except that a former parent's duty to make past-due-payments for child support is not terminated, and the former parents are divested of all rights with respect to the adoptee.

As with section 48-3-606(9), any waiver of this provision accrues to the detriment only of the would-be former parent, while actually conferring benefits on the minor who gains an additional adult who is legally obligated to his care and support. Again, Jarrell herself makes this point in her motion for waiver to the adoption court where she notes that the waiver will avail the minor of additional health and governmental benefits, as well as provide stability and "a legal framework for resolving any disputes regarding custody or visitation that may arise after the adoption." This is exactly the end achieved by the adoption in this case. Following unforeseen circumstances, namely the end of the parties' domestic partnership, the minor's interests, both financial and emotional, are protected. Because of the adoption here, the minor will still be entitled to the support and care of the two adults who have acted as his parents and they will both remain fully obligated to his welfare. This result is fully in accord with the stated intent of Chapter 48:

> (1) The primary purpose of this Chapter is to advance the welfare of minors by (i) protecting minors from unnecessary separation from their original parents, (ii) facilitating the adoption of minors in need of adoptive placement by persons who can give them love, care, security, and support, (iii) protecting minors from placement with adoptive parents unfit to have responsibility for their care and rearing, and (iv) assuring the finality of the adoption[.]

N.C.G.S. § 48-1-100(b) (2009). Here, the evidence before the adoption court tended to show that Boseman and Jarrell planned the conception and birth of the minor and both had acted in a parental capacity providing the minor with "love, care, security, and support." In addition, the General Assembly in Chapter 48 seeks "to promote the integrity and *finality* of adoptions" and "to encourage prompt, *conclusive* disposition of adoption proceedings." N.C.G.S. § 48-1-100(a) (emphasis added). Further, our General Assembly has directed that:

> (c) In construing this Chapter, the needs, interests, and rights of minor adoptees are primary. Any conflict between the interests of a minor adoptee and those of an adult shall be resolved in favor of the minor.

(d) This Chapter shall be liberally construed and applied to promote its underlying purposes and policies.

N.C.G.S. § 48-1-100. Thus, here we must put the minor's "needs, interests, and rights" above those of either Boseman or Jarrell. Finally, because "the right of adoption is not only beneficial to those immediately concerned but likewise to the public, construction of the statute should not be narrow or technical . . . [but rather] fair and reasonable . . . where all material provisions of the statute have been complied with." *Locke v. Merrick*, 223 N.C. 799, 803, 28 S.E.2d 523, 527 (1944). Having reviewed the intent and purposes of Chapter 48, as well as the specific provisions at issue here, we conclude that the adoption court acted within its authority in granting the direct placement adoption decree, and that the grant of waiver of certain provisions was, at most, erroneous and contrary to law. Thus, the adoption decree is not void. We remand to the trial court for entry of an order containing the required findings of fact and denying defendant's Rule 60(b)(4) on grounds that the adoption decree was not void and that N.C.G.S. § 48-2-607(a) prohibits defendant from contesting its validity.

We note that both parties have made extensive arguments related to the same-sex nature of their former relationship and whether our State and its agencies sanction adoptions by same-sex couples. While acknowledging that such issues are matters of great public interest and of personal significance to Boseman and Jarrell, we emphasize that the specific nature of the parties' relationship or marital status was not relevant to resolution of the instant appeal. The same result would have been reached had the parties been an unmarried heterosexual couple. While Chapter 48 does not specifically address same-sex adoptions, these statutes do make clear that a wide range of adoptions are contemplated and permitted, so long as they protect the minor's "needs, interests, and rights."

### III and IV

[3] Jarrell sought a declaratory judgment with respect to "the legal effect of the Department's alleged refusal to index the non-stepparent adoption decree on this State's permanent retention system." Based on the same misapprehension of law discussed above, the trial court dismissed this action for lack of jurisdiction. This was error by the trial court, but as discussed above, the adoption decree was not void *ab initio* and cannot be challenged by Jarrell. Therefore, Jarrell's

declaratory judgment action is moot. The order dismissing the declaratory judgment for lack of jurisdiction is vacated and the matter is remanded for entry of an order consistent with this opinion. In addition, based on the validity of the adoption, the trial court did not err in ruling that Boseman was a legal parent of the child. This argument by Jarrell is overruled.

## V, VI, and VII

[4] Defendant next argues that the trial court erred in making its fourth conclusion of law in the custody order for the child: "[Boseman] has standing to pursue custody of [the minor] in that [Jarrell] has acted inconsistent [sic] with her paramount parental rights and responsibilities." We need not reach this argument as the trial court's other conclusions, namely that Boseman is a parent of the child based on the adoption decree and that both Boseman and Jarrell are fit and proper persons for custody of the child, fully support its custody award.

Finally, Jarrell also argues that the trial court applied the wrong standard of proof for determining custody, and erred in denying her Rule 12(b)(1) and 12(b)(6) motions. Because these arguments rest on Jarrell's contention that Boseman is a non-parent, they also fail.

## Conclusion

Because the adoption decree was not void and Jarrell may not challenge its validity, Boseman is a legal parent of the child. As discussed above, we affirm in part, and vacate and remand in part for entry of orders consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.

Chief Judge MARTIN and Judge BEASLEY concur.