IN THE MATTER OF D.L.H.

No. 350PA09

(Filed 17 June 2010)

**Juveniles— delinquency—credit not allowed for time spent in secure custody before disposition**

The Court of Appeals erred by holding that the term of a delinquent juvenile's confinement may be reduced by time spent in court-ordered custody before disposition because: (1) while

**IN RE D.L.H.** ˙

[364 N.C. 214 (2010)]

criminal sentences are designed to impose a punishment commensurate with the injury the offense has caused and to provide a general deterrent to criminal behavior, dispositions in juvenile actions have a greater focus on accountability and responsibility and aim to provide the appropriate consequences, treatment, training, and rehabilitation to assist the juvenile toward becoming a nonoffending, responsible, and productive member of the community; (2) the district court concluded that the juvenile was in need of the protective supervision of the court; (3) the time the juvenile spent in secure custody pending disposition was not the same as a term of juvenile confinement imposed under N.C.G.S. § 7B-2506(20), and her placement in a juvenile facility until disposition of her case was not a direct consequence of fighting at school or skipping classes, but instead was a reasonable exercise of the district court's discretion that was intended to serve the juvenile's best interests while the parties gathered information on how best to respond to her particular circumstances; (4) given the necessary delay in disposition, the district court believed this was the best temporary situation available for the juvenile; (5) the juvenile has advanced no argument that due process requires credit for time served before disposition in juvenile proceedings; (6) nothing in *In re Vinson*, 298 N.C. 640 (1979), can be construed as importing the entirety of North Carolina's criminal procedure law into the juvenile context; and (7) the absence of any statutory indication that N.C.G.S. § 15-196.1 applies to juvenile matters or that a juvenile is otherwise entitled to credit for time served under the circumstances of this case, together with the legislative policy of affording the courts a wide variety of options in juvenile matters, compels the conclusion that terms of juvenile confinement may not be reduced by time spent in court-ordered custody before disposition.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 198 N.C. App. ——, 679 S.E.2d 449 (2009), affirming in part and reversing in part orders entered on 13 December 2007 by Judge Sherry F. Alloway, on 14 January 2008 and 25 February 2008 by Judge Lawrence C. McSwain, and on 29 January 2008 by Judge Polly D. Sizemore, all in District Court, Guilford County. Heard in the Supreme Court on 15 February 2010.

**IN RE D.L.H.**

[364 N.C. 214 (2010)]

*Roy Cooper, Attorney General, by LaToya B. Powell, Assistant Attorney General, for the State-appellant.*

*Leslie C. Rawls for juvenile-appellee.*

NEWBY, Justice.

The issue in this case is whether the delinquent juvenile D.L.H. is entitled to have her term of confinement reduced by time spent in secure custody pending her dispositional hearings. The General Statutes do not authorize credit for time served before disposition in the juvenile context, and our judiciary may not read into the law provisions that were not included by the legislature. Accordingly, terms of juvenile confinement may not be reduced by time spent in court-ordered custody before disposition. The Court of Appeals holding as to this issue is therefore reversed.

On 28 June 2007, a petition was filed alleging that D.L.H. was a delinquent juvenile based on her role in an affray at school. D.L.H. admitted to the affray in a transcript of admission filed 6 July 2007. By order entered 19 July 2007, the District Court, Guilford County, adjudicated D.L.H. a delinquent juvenile, continued disposition until 2 August 2007, and, in accordance with N.C.G.S. § 7B-1903(c), ordered that D.L.H. remain in the Guilford County Juvenile Detention Center pending disposition. D.L.H. remained in secure custody from her 6 July 2007 adjudicatory hearing until the dispositional hearing on 2 August 2007. Based on the latter hearing, the district court entered an order on 21 August 2007 placing D.L.H. on "Level 2 probation." The district court also imposed fourteen days of juvenile confinement, but provided "that those days are stayed on the condition that the juvenile cooperate and complete the terms of probation."

On 9 November 2007, a juvenile court counselor filed a motion for review, alleging that D.L.H. had violated the terms of her probation by unlawful absence from school. In an order entered 13 December 2007, the district court found that D.L.H. admitted to the counselor's allegations of truancy. As a result, the court ordered D.L.H. to serve the fourteen days of juvenile confinement that had been stayed by the 21 August 2007 order. D.L.H. served the fourteen days from 3 December 2007 through 17 December 2007. The court continued disposition until 3 January 2008. Following the 3 January 2008 hearing, the district court entered an order on 14 January 2008 in which the court again continued disposition, this time until 31 January 2008, and placed D.L.H. in the Guilford County Juvenile

**IN RE D.L.H.**

[364 N.C. 214 (2010)]

Detention Center pending disposition. In addition to her fourteen day term of confinement, D.L.H. spent a total of fifty-five days in secure custody awaiting disposition.

On 10 January 2008, before the 31 January 2008 dispositional hearing, D.L.H. filed a motion seeking release from custody. In an order entered 29 January 2008, the motion was continued until the previously scheduled 31 January 2008 hearing. After that hearing took place, the district court entered an order on 25 February 2008 that extended D.L.H.'s probation until 31 January 2009. By notice filed 26 February 2008, D.L.H. appealed the district court's orders of 13 December 2007, 14 January 2008, 29 January 2008, and 25 February 2008.

In pertinent part, D.L.H. argued to the Court of Appeals that the district court erred by failing to reduce her fourteen days of juvenile confinement by the time she spent in secure custody pending disposition of her case. The Court of Appeals agreed, holding that N.C.G.S. § 15-196.1, the statute governing credit for time served in criminal cases, applies to juvenile confinement and that D.L.H. was entitled to credit for time served before disposition. *In re D.L.H.*, —— N.C. App. ——, ——, 679 S.E.2d 449, 452-54 (2009). This Court allowed discretionary review to determine whether section 15-196.1 applies in the juvenile context.

We begin our analysis by observing that the nature and purposes of juvenile proceedings remain distinct from those of criminal prosecutions. A finding of juvenile delinquency cannot be equated with a criminal conviction for all purposes, and *"protective* custody"[1] of juveniles differs from the imprisonment of criminals. *In re Burrus*, 275 N.C. 517, 529, 533-34, 169 S.E.2d 879, 886-87, 889-90 (1969) (emphasis added), *aff'd sub nom. McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971). While criminal sentences are designed "to impose a punishment commensurate with the injury the offense has caused . . . and to provide a general deterrent to criminal behavior," N.C.G.S. § 15A-1340.12 (2009), dispositions in juvenile actions have a greater focus on "accountability and responsibility" and aim to "[p]rovide[] the appropriate consequences, treatment, training, and rehabilitation to assist the juvenile toward becoming a nonoffending, responsible, and productive member of

---

1. For purposes of this opinion, "protective custody" refers to court-ordered custody of delinquent juveniles in general, including secure custody pending disposition, as well as confinement under N.C.G.S. § 7B-2506(20). "Secure custody," meanwhile, is a specific term of art used in Article 19 of the Juvenile Code.

the community," *id.* § 7B-2500 (2009). In confining delinquent juveniles, the State acts more as a caregiver than a jailer,

> exercis[ing] its power as *parens patriae* to protect and provide for the comfort and well-being of such of its citizens as by reason of infancy . . . are unable to take care of themselves. Thus, juveniles are in need of supervision and control due to their inability to protect themselves. In contrast, adults are regarded as self-sufficient.

*In re Walker*, 282 N.C. 28, 39, 191 S.E.2d 702, 709 (1972) (second alteration in original) (citation and internal quotation marks omitted). Indeed, when D.L.H. was adjudicated delinquent, the district court concluded that she was "in need of the *protective* supervision of the court." (Emphasis added.)

Further, we recognize that the time D.L.H. spent in secure custody pending disposition is not the same as a term of juvenile confinement imposed under N.C.G.S. § 7B-2506(20). D.L.H.'s placement in a juvenile facility until disposition of her case was not a direct consequence of fighting at school or skipping classes. Rather, the placement was a reasonable exercise of the district court's discretion that was intended to serve D.L.H.'s best interests while the parties gathered information on how best to respond to her particular circumstances. In its 25 February 2008 order, the district court made the following findings of fact:

> 5. The mother of the juvenile informs the court that the juvenile comes and goes as she pleases. Her mother also indicates the juvenile ignores curfews.
>
> 6. That on January 3, 2008 the mother informed the court that she was not willing to have the juvenile home and needed help from the court. The juvenile was placed in detention pending disposition on January 31, 2008.

These findings are unchallenged on appeal and are therefore binding on this Court. *E.g.*, *In re J.D.B.*, 363 N.C. 664, 668, 686 S.E.2d 135, 137 (2009) (citation omitted). D.L.H.'s mother was also concerned about the people with whom her daughter was associating, including a "much older" man who allegedly sold drugs. Discussing possible courses of action during the 3 January 2008 hearing, D.L.H.'s mother beseeched the district court to help her, stating, "I just need something where [D.L.H.] would learn to control her attitude, go to school, do as she's supposed to." D.L.H.'s mother proposed a number of

IN RE D.L.H.

[364 N.C. 214 (2010)]

potential options, including night school, a structured day program, and an out-of-home placement. However, the parties had not yet fully investigated whether these programs would be appropriate in D.L.H.'s case, and thus, the district court was not able to make an informed decision at that time. The court continued disposition, instructed the parties to continue looking into the various alternatives, and placed D.L.H. in secure custody for the meantime. The court indicated that it was not ordering secure custody to punish D.L.H., but rather to ensure that her mother and the court would not "have to worry about" her while the parties conducted their investigations. In the court's own words, "I think I'm doing it for the good of this young lady in the long-run."

Given the necessary delay in disposition,[2] the district court placed D.L.H. in secure custody because it believed this was the best temporary situation available for the juvenile. The General Assembly has demonstrated through the Juvenile Code its desire to give the courts a broad range of alternatives in juvenile delinquency cases, with the manifest goal of creating optimal solutions tailored to the particular circumstances of each wayward child. *E.g.*, N.C.G.S. § 7B-2506(12) (enabling the court to impose intermittent confinement for a term of up to five days), (20) (confinement for a term of up to fourteen days), (24) (2009) (commitment to a youth development center for a term of at least six months). Especially in light of this legislative intent, we are reluctant to limit the district court's options in the name of treating delinquent juveniles like adult criminals.

D.L.H. nevertheless contends that the distinction between juvenile and criminal proceedings is not clear, citing this Court's decision in *In re Vinson*, 298 N.C. 640, 260 S.E.2d 591 (1979). Although this Court applied several criminal procedure protections in *In re Vinson*, a juvenile delinquency case, we reasoned in doing so that those pro-

---

2. The district court continued disposition in accordance with N.C.G.S. § 7B-2406. Nonetheless, particularly in a case involving secure custody pending disposition, we are compelled to reiterate the mandates of that statute, which encourage expeditious handling of juvenile matters:

> The court for good cause may continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile.

N.C.G.S. § 7B-2406 (2009).

tections were mandated by constitutional guarantees of due process. *Id.* at 650-52, 260 S.E.2d at 598-99. D.L.H. has advanced no argument that due process requires credit for time served before disposition in juvenile proceedings. Furthermore, the criminal procedure devices employed in *In re Vinson* related only to the conduct of the juvenile's adjudicatory and dispositional hearings, not to the effect that time served before disposition might have on the juvenile's term of confinement. Nothing in *In re Vinson* can be construed as importing the entirety of North Carolina's criminal procedure law into the juvenile context. In fact, we explicitly acknowledged in *In re Vinson* the need "to carefully balance" juveniles' due process rights with "the State's police power interest in preserving order and its *parens patriae* interest in a delinquent child's welfare." *Id.* at 652, 260 S.E.2d at 599. We adhere to our desire to give due regard to the State's interest in ensuring juvenile well-being, and we find the criminal procedure safeguards applied in *In re Vinson* inapposite to the case *sub judice*. Mindful of the important differences between juvenile proceedings and criminal prosecutions, we now consider the statutory provisions at issue in this case.

Section 15-196.1 of the General Statutes provides:

> The minimum and maximum term of a sentence shall be credited with and diminished by the total amount of time a defendant has spent, committed to or in confinement in any State or local correctional, mental or other institution as a result of the charge that culminated in the sentence. The credit provided shall be calculated from the date custody under the charge commenced and shall include credit for all time spent in custody pending trial, trial de novo, appeal, retrial, or pending parole, probation, or post-release supervision revocation hearing: Provided, however, the credit available herein shall not include any time that is credited on the term of a previously imposed sentence to which a defendant is subject.

N.C.G.S. § 15-196.1 (2009). By its plain language, this statute makes no reference to its applicability in juvenile matters. Section 15-196.1 is located in Chapter 15 of the General Statutes, entitled "Criminal Procedure." We have already demonstrated that D.L.H.'s delinquency proceedings do not constitute a criminal prosecution and are thus not subject to the full range of criminal procedure provisions. Moreover, as correctly noted by the Court of Appeals, there is no statute allowing credit for time served before disposition in the

Juvenile Code, which comprises Chapter 7B of the General Statutes and governs juvenile cases. *In re D.L.H.*, —— N.C. App. at ——, 679 S.E.2d at 453.

"When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *State v. Jackson*, 353 N.C. 495, 501, 546 S.E.2d 570, 574 (2001) (citation and internal quotation marks omitted). The absence of any statutory indication that section 15-196.1 applies to juvenile matters or that a juvenile is otherwise entitled to credit for time served under the circumstances of this case, together with the legislative policy of affording the courts a wide variety of options in juvenile matters, compels us to conclude that terms of juvenile confinement may not be reduced by time spent in court-ordered custody before disposition.

A fuller consideration of the statutory schemes at work in this case only strengthens our conclusion. Section 15-196.1 demonstrates that the General Assembly knows how to provide credit for time served. Thus, the absence of a similar provision in the Juvenile Code seems to indicate a legislative intent not to allow such credit in juvenile cases. Also, the Juvenile Code itself specifically allows juvenile commitment terms to be reduced by the amount of "time the juvenile spends on *post-release supervision*." N.C.G.S. § 7B-2514(f) (2009) (emphasis added). This provision is further evidence that our legislature knows how to allow credit for time served and has consciously chosen not to do so with respect to time served before disposition of juvenile proceedings.

In addition, there are numerous instances in the Juvenile Code in which the General Assembly has explicitly made criminal procedure statutes and other criminal provisions applicable to juvenile proceedings. For example, the Juvenile Code expressly imports provisions from Chapter 15A, the Criminal Procedure Act, with respect to service of process. *Id.* § 7B-1806 (2009). Similarly, for cases in which the allegations of a juvenile petition are denied, the Juvenile Code specifically adopts "the rules of evidence applicable to criminal cases." *Id.* § 7B-2408 (2009). This practice of using clear legislative pronouncements to apply criminal provisions to juvenile cases renders all the more conspicuous the Juvenile Code's lack of any reference to section 15-196.1.

FUSSELL v. N.C. FARM BUREAU MUT. INS. CO.

[364 N.C. 222 (2010)]

"It is our duty to interpret and apply the law as it is written, but it is the function and prerogative of the Legislature to make the law." *State v. Scoggin*, 236 N.C. 19, 23, 72 S.E.2d 54, 57 (1952) (citations omitted). As written, neither the criminal procedure provisions of our General Statutes nor the Juvenile Code calls for section 15-196.1 to be applied to juvenile proceedings. If juveniles are to receive credit for time spent in court-ordered custody before disposition, that result must be accomplished by legislative enactment rather than judicial fiat. Although we recognize that the distinction between juvenile proceedings and criminal prosecutions can be a fine one, our decision reflects the General Assembly's apparent and laudable desire to continue drawing that distinction. "Whatever may be the shortcomings of the [Juvenile Code], . . . we are not inclined to hamstring the State in its efforts to deal with errant children as wards of the State instead of criminals. The Constitution does not require such mischievous meddling." *In re Burrus*, 275 N.C. at 534, 169 S.E.2d at 889-90.

We hold that D.L.H. is not entitled to have her term of confinement reduced by time she spent in secure custody before her dispositional hearings, and we therefore reverse the Court of Appeals decision as to that issue. The remaining issues addressed by the Court of Appeals are not before this Court, and its decision as to those issues remains undisturbed.

REVERSED.