711 S.E.2d 471 (2011)
In the Matter of J.S.W.
No. COA10-981.
Court of Appeals of North Carolina.
May 3, 2011.
*472 Roy Cooper, Attorney General, by LaToya B. Powell, Assistant Attorney General, for the State.
Staples Hughes, Appellate Defender, by Kristen L. Todd, Assistant Appellate Defender, for juvenile-appellant.
MARTIN, Chief Judge.
On 12 June 2007, pursuant to a plea, the juvenile, J.S.W., admitted the allegations contained in petitions alleging that he had committed the offenses of first-degree rape, first-degree sexual offense, breaking or entering, larceny after breaking or entering, selling or delivering a controlled substance, and possession of stolen goods, and the State voluntarily dismissed allegations of simple assault and indecent liberties between children. The juvenile was adjudicated delinquent for the offense of first-degree rape under N.C.G.S. § 14-27.2. The district court entered a Level 3 Disposition and Commitment Order in which it ordered that the juvenile be committed to the Department of Juvenile Justice and Delinquency Prevention (the Department) for placement in a youth development center for a minimum period of six months and for a total period of commitment that is indefinite. The district court also ordered that the juvenile
[Have n]o contact with [specified individuals]
Register as a Sex Offender
Undergo a Sex Offender Specific Evaluation and Treatment
Undergo a Psychological Evaluation
Cooperate with Substance Abuse Treatment
Remain in YDC for the maximum time allowed by law.
On 3 April 2009, a Motion for Review was filed requesting "to extend [the juvenile's] commitment at the Youth Development Center." On 7 August 2009, the district court entered an order which included findings that the district court's original order that the juvenile remain in the Department's custody until his twenty-first birthday should remain in effect and that the juvenile had "not successfully completed sex offender specific treatment as ordered." The district court ordered that the juvenile remain in the Department's custody until his twenty-first birthday, that he be provided all educational benefits available, and that the district court would "entertain a request for an earlier release upon successful completion of sex offender specific treatment." On 14 December 2009, a second Motion for Review was filed. On 9 February 2010, the district court entered an order finding and concluding that the juvenile had "successfully completed the Sex Offender Specific Treatment" and ordering that the juvenile "shall remain in the Youth Development Center until his twenty-first birthday."
On 5 March 2010, a juvenile court counselor filed a Motion for Review stating "[t]hat the Youth Development Center staff and [the juvenile's] parent would like some clarification as to whether the juvenile can work off campus and participate in home visits or overnight visits." On 25 March 2010, a letter signed by a Work Force Investment Act Career Specialist at the C.A. Dillon Youth Development Center (the YDC) was filed. The letter stated that J.S.W. "would be a great candidate for the [Work Force Investment Act] program," stated that if J.S.W. were placed in the program, he "would be able to go off C.A. Dillon's campus and participate in on-the-job training programs," and requested "the permission of the court to include [J.S.W.] in[] th[e] program." The district court conducted a hearing on the motion. During the hearing, the State requested that the juvenile be denied the opportunities to work off campus and to participate *473 in home and overnight visits. The State noted that "[t]he victim [of the rape] . . . was mentally challenged" and that, following the rape, additional petitions were filed alleging the juvenile's delinquency for having committed felony drug offenses. The district court heard from Mr. Peter Koontz, a senior psychologist at the YDC, and Ms. Monica Glover, a psychologist who treated J.S.W., both of whom requested that J.S.W. be allowed to participate in the YDC's programs; Mr. Eric Duane Lee, a minister familiar with J.S.W.'s case; and J.S.W.'s mother. Following the hearing, the district court ordered
1. That the juvenile may work off campus but is to not be around anybody who is twenty five years or younger.
2. That the juvenile have no home or overnight visits.
3. That the juvenile can participate in outings with YDC but there is to be direct supervision at all times.
The juvenile appeals from that order.
The juvenile first contends that the district court erred by ordering that he have no home or overnight visits and by ordering that he may work off campus on the condition that he not be around anyone twenty-five years of age or younger which, the juvenile contends, effectively prevents him from working off campus entirely. The juvenile contends that upon being committed to the Department, the Department had authority, as provided by N.C.G.S. § 143B-516, over the "services, privileges, or punishments [he] should and should not receive while in the custody of the Department," and that, therefore, the district court lacked subject matter jurisdiction and exceeded its authority by entering an order concerning those services, privileges, and punishments. We disagree.
"The court has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be delinquent." N.C. Gen. Stat. § 7B-1601(a) (2009). When a juvenile is committed to the Department for placement in a youth development center "for an offense that would be . . . first-degree rape pursuant to G.S. 14-27.2 . . . if committed by an adult, jurisdiction shall continue until terminated by order of the court or until the juvenile reaches the age of 21 years, whichever occurs first." N.C. Gen.Stat. § 7B-1602(a) (2009). "Commitment of a juvenile to the Department for placement in a youth development center does not terminate the court's continuing jurisdiction over the juvenile and the juvenile's parent, guardian, or custodian." N.C. Gen.Stat. § 7B-2513(g) (2009). "Commitment of a juvenile to the Department for placement in a youth development center transfers only physical custody of the juvenile." Id. Upon a motion or petition and "after notice, the court may conduct a review hearing to determine whether the order of the court is in the best interests of the juvenile, and the court may modify or vacate the order in light of changes in circumstances or the needs of the juvenile." N.C. Gen.Stat. § 7B-2600(a) (2009). In a case of delinquency, the court "may reduce the nature or the duration of the disposition on the basis that it was imposed in an illegal manner or is unduly severe with reference to the seriousness of the offense, the culpability of the juvenile, or the dispositions given to juveniles convicted of similar offenses." N.C. Gen.Stat. § 7B-2600(b).
In any case where the court finds the juvenile to be delinquent or undisciplined, the jurisdiction of the court to modify any order or disposition made in the case shall continue (i) during the minority of the juvenile, . . . (iii) until the juvenile reaches the age of 21 years if the juvenile has been adjudicated delinquent and committed for an offense that would be . . . first-degree rape pursuant to G.S. 14-27.2 . . . if committed by an adult, or (iv) until terminated by order of the court.
N.C. Gen.Stat. § 7B-2600(c). "The North Carolina Juvenile Code patently provides for jurisdiction to lie exclusively in the district court between the stages of allegation and the final release of a juvenile." In re Doe, 329 N.C. 743, 748, 407 S.E.2d 798, 801 (1991).
In In re Doe, our Supreme Court addressed a juvenile's challenge to a district court's order based on the Separation of Powers Clause of the Constitution of North *474 Carolina. Id. at 751, 407 S.E.2d at 803. The district court in In re Doe had entered an order denying the conditional release of a juvenile based on the failure of the Department of Human Resources, Division of Youth Services,[1] to comply with the district court's original order that the juvenile receive specific treatment for sexual offenders while he was committed. Id. at 747-48, 407 S.E.2d at 800-01. In rejecting the juvenile's argument, our Supreme Court reasoned that "[n]ecessary, functional overlap of two of the three separate, coordinate branches of government has been drafted directly into the Juvenile Code by the third, the legislative branch." Id. at 753, 407 S.E.2d at 804. The Court noted that "[t]he Code combines and coordinates the custodial and administrative role of DYS as an executive agency with the continuing jurisdiction and supervisory role of the district court," id., and cited various portions of the Juvenile Code reflecting that functional overlap, which include statutes now codified as N.C.G.S. §§ 7B-2506 and 7B-2514. See N.C. Gen.Stat. § 7B-2506(19) (2009) (authorizing court to suspend imposition of more severe, statutorily permissible disposition with the provision that the juvenile meet certain conditions); N.C. Gen.Stat. § 7B-2514(a)(1) (2009) (requiring written notification of post-release planning decision to the committing court). The Court further noted that, in the context of the Juvenile Code, "overnice concerns about the separation of powers as a question of a precise division of labor are bootless." In re Doe, 329 N.C. at 754, 407 S.E.2d at 805.
The juvenile argues that the holding in In re Doe is inapplicable and attempts to distinguish the facts in In re Doe from the facts here on the ground that in In re Doe, the district court's denial of the juvenile's conditional release from the detention center and order that he receive specialized sex offender treatment involved "dispositional directives," whereas here, the district court's order involved "privileges or punishments" the juvenile should and should not receive while in the custody of the Department. For his argument, the juvenile relies on no authority aside from N.C.G.S. § 143B-516 and the Department's policies. Although N.C.G.S. § 143B-516 provides the Secretary of the Department the powers and duties of, among other things, "[o]perat[ing] juvenile facilities and implement[ing] programs that meet the needs of juveniles receiving services and that assist them to become productive, responsible citizens" and "[a]dopt[ing] rules to implement this Article and the responsibilities of the Secretary and the Department under Chapter 7B of the General Statutes," see N.C. Gen.Stat. § 143B-516 (b)(4)-(5) (2009), given the "[n]ecessary, functional overlap" of the Department and the committing court in juvenile cases, see In re Doe, 329 N.C. at 753, 407 S.E.2d at 804, under the circumstances in this case, we are unwilling to accept the juvenile's argument that the district court was without authority to enter an order affecting "privileges or punishments" established by the Department.
The juvenile next contends the district court abused its discretion in entering its order by considering punishment as a purpose of the Juvenile Code instead of considering the factors set forth in N.C.G.S. § 7B-2501(c). We disagree.
After hearing testimony which included requests that the juvenile be permitted to have home and overnight visits and work off campus, the district court stated that "part of the process of juvenile court is . . . punishment. That young girl is going to need help the rest of her life too." The district court continued, "[T]here are two goals this Court has. One of them is definitely rehabilitation because I know that at some point he will be on the streets. And it varies for different persons and varies for different crimes and the nature of them. Punishment sometimes is also my goal." The district court then repeated, "Punishment is one of the goals. And I make no bones about it."
N.C.G.S. § 7B-2501 requires that the district court consider the "seriousness of the offense," the "need to hold the juvenile accountable," the "importance of protecting the *475 public safety," the "degree of culpability indicated by the circumstances of the particular case," and the "rehabilitative and treatment needs of the juvenile indicated by a risk and needs assessment" in selecting a disposition "designed to protect the public and to meet the needs and best interests of the juvenile." See N.C. Gen.Stat. § 7B-2501(c) (2009). The district court's statements reflect that it considered these dispositional objectives. Indeed, the trial court allowed the juvenile to work off campus as long as the juvenile did not come into contact with anyone aged twenty-five years or younger. By doing so, the district court ultimately balanced the importance of protecting the public safety with the rehabilitative needs of the juvenile. Although "dispositions in juvenile actions have a greater focus on accountability and responsibility" than do criminal sentences, which are "designed to impose a punishment commensurate with the injury the offense has caused . . . and to provide a general deterrent to criminal behavior," In re D.L.H., 364 N.C. 214, 217, 694 S.E.2d 753, 755 (2010) (omission in original) (internal quotation marks omitted), taken as a whole, the district court's statements and decision demonstrate that it exercised its discretion in accordance with the criteria set forth in N.C.G.S. § 7B-2501(c). See In re Z.A.K., 189 N.C.App. 354, 362, 657 S.E.2d 894, 898-99 (2008) ("We also find no merit in defendant's claim that the trial court failed to exercise dispositional discretion. Although defendant notes two instances in which the trial judge indicated a general policy preference on his part for level II dispositions for juveniles who commit felonies, the extended discussion in the transcripts reveals that the judge considered a variety of factors before design[ing] an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State." (internal quotation marks omitted)).
No error.
Judges HUNTER and THIGPEN concur.
NOTES
[1] The Department of Human Resources, Division of Youth Services is now part of the Department of Juvenile Justice and Delinquency Prevention.