IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-926

 Filed: 18 June 2019

Rowan County, Nos. 16 JT 33-34

IN RE: T.H. & M.H.

 Appeal by Respondents from order entered 1 June 2018 by Judge Charlie

Brown in Rowan County District Court. Heard in the Court of Appeals 30 May 2019.

 Jane R. Thompson for Petitioner-Appellee Rowan County Department of Social
 Services.

 Cranfill Sumner & Hartzog LLP, by Katherine Barber-Jones, for guardian ad
 litem.

 Dorothy Hairston Mitchell for Respondent-Appellant Mother.

 Parent Defender Wendy C. Sotolongo, by Deputy Parent Defender Annick
 Lenoir-Peek, for Respondent-Appellant Father.

 DILLON, Judge.

 Respondents, Mother and Father of the minor children T.H. (“Tonya”) and

M.H. (“Madeline”),1 appeal from the trial court’s order terminating their parental

rights to the children. We hold the trial court did not abuse its discretion in

determining that termination of Mother’s parental rights was in the children’s best

 1 Pseudonyms are used to protect the juveniles’ identities, see N.C. R. App. P. 42, and for ease
of reading.
 IN RE: T.H. & M.H.

 Opinion of the Court

interests, and we hold it properly concluded grounds existed to terminate Father’s

parental rights based on neglect. We, therefore, affirm the trial court’s order.

 I. Background

 Respondents’ history with the Rowan County Department of Social Services

(“DSS”) dates back to 2011 due to substance abuse and mental health issues and their

lack of proper care and supervision of the children. In November 2011, Mother tested

positive for methadone and amphetamines at Tonya’s birth, and Tonya had to remain

in the hospital for weeks due to significant withdrawal symptoms. From 2011 to

2016, DSS received multiple reports regarding the family due to drug abuse and

supervision issues.

 DSS most recently became involved with the family in early 2016 after

receiving reports relating to Respondents’ substance abuse and inappropriate living

conditions. On 12 February 2016, DSS filed a juvenile petition alleging both juveniles

to be neglected and dependent and took the children into non-secure custody.

 A week later, Respondents entered into an Out of Home Family Services

Agreement (OHFSA) in which they agreed to obtain and maintain appropriate

housing, obtain and maintain employment, complete substance abuse and mental

health treatment, complete a psychiatric evaluation, submit to random drug screens,

complete a parenting education course, resolve all pending legal issues, and refrain

from criminal activity.

 -2-
 IN RE: T.H. & M.H.

 Opinion of the Court

 Five weeks later, on 31 March 2016, the trial court entered a consent order,

adjudicating the children neglected and dependent. The trial court found that

Respondents had multiple pending criminal charges and continued to suffer from

long-term, untreated substance abuse and mental health issues. The court also found

that the children were living in an unsafe environment and were not receiving proper

medical or dental care. The court ordered Respondents to comply with the

components of their case plan. Over the next several months, however, both Mother

and Father were in and out of jail.

 On 2 June 2016, Mother completed her substance abuse assessment and was

recommended to complete forty (40) hours of structured group therapy and to see a

psychiatrist. Mother attended one group session in December 2016 but did not attend

another session. On 23 January 2017, Mother was arrested for obtaining a controlled

substance by fraud or forgery after attempting to fill her recently deceased mother’s

prescription for Alprazolam.

 In June 2017, the trial court entered a permanency planning review order,

changing the primary permanent plan to adoption with a secondary plan of

reunification. The trial court found that Respondents had not made any progress on

their case plans, finding that Respondents had not participated in any treatment

recommendations, including any substance abuse or mental health services, that they

had not engaged in any parenting education services, and that “[n]either parent

 -3-
 IN RE: T.H. & M.H.

 Opinion of the Court

understands the severity of their [criminal] charges or the effect their criminal

behavior and incarcerations have on their children.”

 A month later, in July 2017, DSS filed a petition to terminate Respondents’

parental rights based on the grounds of neglect, willfully leaving the children in foster

care without making reasonable progress to correct the conditions which led to the

children’s removal, and willfully failing to pay a reasonable portion of the children’s

cost of care. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3) (2017).

 Eleven months later, in June 2018, following two hearings on the matter, the

trial court entered an order concluding that grounds existed to terminate

Respondents’ parental rights based on neglect and willfully leaving the children in

foster care without making reasonable progress, and that termination of

Respondents’ parental rights was in the children’s best interests.

 Accordingly, the trial court terminated Respondents’ parental rights to Tonya

and Madeline. Respondents each filed timely written notice of appeal.

 II. Analysis

 Mother and Father appeal, each bringing separate issues corresponding to

termination of their individual parental rights. We address each respondent in turn.

 A. Mother’s Appeal

 Mother does not challenge the trial court’s adjudication that grounds existed

to terminate her parental rights. Rather, Mother’s sole issue on appeal is that the

 -4-
 IN RE: T.H. & M.H.

 Opinion of the Court

trial court abused its discretion in determining that termination of her parental

rights was in the children’s best interests.

 After a trial court adjudicates the existence of at least one ground for

termination, the court must then determine at disposition whether termination is in

the best interests of the child. N.C. Gen. Stat. § 7B-1110(a) (2017). The court must

consider the factors listed in Chapter 7B-1110(a).

 “The court’s determination of the juvenile’s best interest will not be disturbed

absent a showing of an abuse of discretion.” In re E.M., 202 N.C. App. 761, 764, 692

S.E.2d 629, 630 (2010) (citation omitted). “Abuse of discretion results where the

court’s ruling is manifestly unsupported by reason or is so arbitrary that it could not

have been the result of a reasoned decision.” State v. Hennis, 323 N.C. 279, 285, 372

S.E.2d 523, 527 (1988) (citation omitted).

 Mother first argues the trial court failed to make the written findings required

by Chapter 7B-906.2(b) of our General Statutes, which applies to “permanency

planning hearing[s],” in order to cease reunification efforts. Specifically, Mother

appears to view the requirements of Section 7B-906.2(b) as part of the court’s inquiry

under Section 7B-1110(a)(3) in a termination determination. Mother argues that

reunification remained the primary permanent plan at the time of the termination

hearing, and thus the court was required to make the necessary findings under

Chapter 7B-906.2(b) in order to cease reunification efforts. We disagree.

 -5-
 IN RE: T.H. & M.H.

 Opinion of the Court

 First, contrary to Mother’s assertion, reunification was not the primary

permanent plan at the time of the termination hearing. In a 30 June 2017

permanency planning order, the trial court changed the permanent plan to a primary

plan of adoption with a secondary plan of reunification. Second, a hearing on a

petition to terminate parental rights is not a permanency planning hearing. Section

7B-906.2 pertains to permanent plans that must be established at permanency

planning hearings, while Chapter 7B, Article 11, the statute at issue here, provides

for the judicial procedures for terminating parental rights. See N.C. Gen. Stat. § 7B-

1100(1) (2017).

 Mother relies on this Court’s recent decision in In re D.A. to support her

argument. However, In re D.A. was not an appeal from a termination order, but from

a permanency planning order granting custody of the child to the foster parents and

waiving further review hearings. In re D.A., ___ N.C. App. ___, 811 S.E.2d 729 (2018).

Mother has not cited any authority requiring the trial court to make the findings set

forth in Section 7B-906.2(b) at a hearing for the termination of parental rights.

 Here, the trial court found that terminating Respondents’ parental rights

“[was] necessary to accomplish the best permanent plan for the juveniles, which is

adoption.” Mother does not challenge this finding, and it is therefore binding on

appeal. In re D.L.H., 364 N.C. 214, 218, 694 S.E.2d 753, 755 (2010). Therefore, the

 -6-
 IN RE: T.H. & M.H.

 Opinion of the Court

trial court made the appropriate finding addressing Section 7B-1110(a)(3), and

Mother’s first argument is overruled.

 Mother next argues the trial court failed to consider three “other relevant

considerations” under Section 7B-1110(a)(6) in determining termination was in the

children’s best interest. Mother contends the trial court failed to consider (1) her

substantial progress toward her sobriety, (2) the bond the children shared with her

and other maternal family members, and (3) DSS’s failure to make reasonable efforts

toward reunification. We disagree and address each in turn.

 Mother first asserts the trial court failed to consider the progress she made

toward her sobriety and self-sufficiency. The trial court’s findings indicate that it did

consider Mother’s claim regarding her progress toward her sobriety, finding that

mother “report[ed] that she [had] been sober for one year” and “that she tested

negative on a drug screen administered by her probation officer yesterday.” However,

there was evidence that Mother was incarcerated for all but a few days of that year

of her claimed sobriety. It is the trial “judge’s duty to weigh and consider all

competent evidence, and pass upon the credibility of the witnesses, the weight to be

given their testimony and the reasonable inferences to be drawn therefrom.” In re

Whisnant, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984). Thus, it was within the

trial court’s discretion to determine that Mother’s years of unaddressed substance

abuse issues outweighed her claim of recent progress.

 -7-
 IN RE: T.H. & M.H.

 Opinion of the Court

 Next, Mother argues the trial court failed to consider the children’s bond with

both her and the children’s biological relatives. Contrary to Mother’s assertion, the

trial court did consider this bond and found that there was not a strong bond.

Specifically, the trial court found that

 There is not a strong bond between the children and their
 parents. [Tonya] does not have memories of being with
 [Mother] and [Father] other than sitting in front of a TV.
 [Tonya] was worried with adoption in the beginning as she
 thought if she loved [her foster parents, Mr. and Mrs. C,]
 then she would be betraying her parents. She does not
 want to be removed from Mr. and Mrs. [C’s] home.
 [Madeline] loves her parents. She worries about them and
 remembers some of the things she was exposed to while in
 the care of her parents. [Madeline] does not feel like she is
 important to [Mother] and [Father]. [Madeline] has
 referred to her parents [by their first names]. [Tonya] and
 [Madeline] have not asked [Mr. and Mrs. C] to have contact
 with [Mother] and [Father].

Mother does not challenge this finding, and therefore it is binding on appeal. In re

D.L.H., 364 N.C. at 218, 694 S.E.2d at 755.

 Mother also contends the court failed to consider the bond the children have

with their biological relatives, namely their maternal aunt and uncle and maternal

grandfather, and argues that terminating her parental rights threatens to destroy

the bonds the children have with the maternal family members. However, the trial

court did make findings in this regard, for instance, specifically finding that the

children visit with their maternal grandfather and their maternal aunt and uncle.

Therefore, we find no merit to Mother’s contention.

 -8-
 IN RE: T.H. & M.H.

 Opinion of the Court

 Lastly, Mother argues the trial court failed to consider DSS’s failure to make

efforts toward reunification. She argues DSS only contacted her once a month while

she was incarcerated and made no efforts to achieve reunification. She contends that,

once she was incarcerated, DSS gave up on its reunification efforts, and that the

court’s failure to consider this factor was an abuse of discretion.

 However, “[t]he trial court is not required to make findings of fact on all the

evidence presented, nor state every option it considered” when determining its

disposition under Section 7B-1110. In re J.A.A., 175 N.C. App. 66, 75, 623 S.E.2d 45,

51 (2005). While the trial court must consider all of the factors in Section 7B-1110(a),

it only is required to make written findings regarding those factors that are relevant.

In re D.H., 232 N.C. App. 217, 221, 753 S.E.2d 732, 735 (2014). A factor is relevant if

there is conflicting evidence concerning the factor such that it is placed in issue. In

re H.D., 239 N.C. App. 318, 327, 768 S.E.2d 860, 866 (2015).

 There was no conflicting evidence concerning DSS’s efforts in contacting

Mother during her incarceration. The only evidence regarding DSS’s reunification

efforts comes from a social worker’s “previously-provided sworn testimony” during

the adjudication phase which was incorporated without objection during the

disposition phase. Because this factor was not “placed in issue[,]” no findings

regarding DSS’s efforts toward reunification were required. Id. Mother has not

 -9-
 IN RE: T.H. & M.H.

 Opinion of the Court

provided any indication that the trial court failed to consider this information in

making its determination.

 Additionally, to the extent Mother attempts to excuse her failure to make

reasonable progress by claiming DSS failed to make efforts toward reunification,

Mother did not challenge the trial court’s adjudication that she willfully failed to

make reasonable progress under Section 7B-1111(a)(2). By arguing that the trial

court “failed to appreciate” DSS’s alleged failure to make reunification efforts, Mother

essentially contends this evidence was not given sufficient weight by the trial court.

However, “[i]t is not the function of this Court to reweigh the evidence on appeal.”

Garrett v. Burris, 224 N.C. App. 32, 38, 735 S.E.2d 414, 418 (2012), aff’d per curiam,

366 N.C. 551, 742 S.E.2d 803 (2013).

 In sum, we see no indication that the trial court failed to consider any “relevant

consideration” under the catch-all provision of Section 7B-1110(a)(6). A court is

entitled to give greater weight to certain factors over others in making its

determination concerning the best interest of a child. In re C.L.C., 171 N.C. App. 438,

448, 615 S.E.2d 704, 709-10 (2005) (explaining that, though mother emphasized her

bond with the child, “[t]he trial court was, however, entitled to give greater weight to

other facts that it found”), aff’d per curiam in part, disc. review improvidently allowed

in part, 360 N.C. 475, 628 S.E.2d 760 (2006) (affirming the majority opinion). The

trial court’s order reflects that it properly considered the required factors and made

 - 10 -
 IN RE: T.H. & M.H.

 Opinion of the Court

a reasoned determination that termination was in the children’s best interests.

Accordingly, we hold the trial court did not abuse its discretion in determining that

termination of Mother’s parental rights was in the best interests of the children, and

we affirm the order terminating her parental rights.

 B. Father’s Appeal

 Father’s counsel has filed a “no-merit” brief on his behalf in which they state

that, after a conscientious and thorough review of the record on appeal and

transcripts, they were unable to identify any issue of merit on which to base an

argument for relief. Pursuant to Rule 3.1(e) of the North Carolina Rules of Appellate

Procedure, they request that this Court conduct an independent examination of the

case. N.C. R. App. P. 3.1(e).

 In accordance with Appellate Rule 3.1(e), appellate counsel wrote Father a

letter advising him of (1) counsel’s inability to find error; (2) counsel’s request for this

Court to conduct an independent review of the record; and (3) Father’s right to file

his own arguments directly with this Court while the appeal is pending. Counsel

attached to the letter a copy of the record, transcript, and no-merit brief. Father,

however, has not submitted written arguments of his own to this Court.

 As such, we are not required to conduct a review as neither Father nor his

counsel has brought forth any issue for our consideration. In re L.V., ___ N.C. App.

___, ___, 814 S.E.2d 928, 928-29 (2018). That is, the no-merit brief provision in Rule

 - 11 -
 IN RE: T.H. & M.H.

 Opinion of the Court

3.1(e) promulgated by our Supreme Court, which does not contain any such

requirement, should not be conflated with the requirements set forth by the United

States Supreme Court where no-merit briefs are filed in a criminal appeal. In re L.V.

is based on the following reasoning, as found in the concurring opinion in State v.

Velasquez-Cardenas, ___ N.C. ___, 815 S.E.2d 9 (2018).

 Our State Constitution provides that our “Supreme Court shall have exclusive

authority to make rules of procedure and practice for the Appellate Division.” N.C.

Const. Art. IV, sec. 13(2). Pursuant to its exclusive authority, our Supreme Court has

promulgated Rule 28(a), which limits the right of an appellant to a review by our

Court to those issues raised in its brief, though in our discretion we can waive Rule

28(a) by invoking Rule 2 of our Rules of Appellate Procedure in order to review other

issues not raised in the briefs. N.C. R. App. P. 2; N.C. R. App. P. 28(a).

 Rule 28(a)’s limited right to review, however, is qualified somewhat by the

United States Supreme Court decision in Anders v. California, in which that Court

determined that a criminal defendant has the right to a review by an appellate court

of issues not raised in his brief in certain circumstances. Anders v. California, 386

U.S. 738, 744 (1967). Anders, however, only applies to the first appeal of right in

criminal cases, not to parental rights appeals. Specifically, in Anders, that Court held

that indigent criminal defendants are entitled under our federal constitution to

certain procedures during a first appeal of right, where appointed counsel fails to

 - 12 -
 IN RE: T.H. & M.H.

 Opinion of the Court

discern a non-frivolous appellate issue. Id. These procedures include (1) the

defendant’s right to file a brief when his attorney has filed a “no merit” brief and (2)

the defendant’s right to a full search of the record by the appellate court, even if no

meritorious issues were raised by the defendant or his attorney.

 In a later case, the U.S. Supreme Court held that, under our federal

constitution, an indigent defendant is not entitled to Anders procedures on subsequent

post-conviction appeals even where state law provides such defendants a right to

counsel for that appeal. See Pennsylvania v. Finley, 481 U.S. 551, 554 (1987).

 This present matter is not criminal in nature; therefore Anders does not apply.

Our General Assembly, however, has provided parents the right to an appeal where

their parental rights are terminated and a right to counsel for that appeal. Our

General Assembly, though, has not provided these parties the right to all Anders

procedures, such as the right to a full Anders review of issues not raised in the briefs.

Neither our State Constitution nor the federal constitution provides this right. And

our Supreme Court has not provided for such a right by appellate rule or otherwise.

Rather, our Supreme Court has restricted the right of review in all appeals to those

raised in the briefs. N.C. R. App. 28(a).

 The Supreme Court had the opportunity to create a right to an Anders-type

review in parental rights cases, but that Court has not done so. Specifically, in 2007,

we held that an indigent parent with a statutory right to counsel had no right to

 - 13 -
 IN RE: T.H. & M.H.

 Opinion of the Court

Anders procedures; but we urged “our Supreme Court or the General Assembly to

reconsider this issue.” In re N.B., 183 N.C. App. 114, 117, 644 S.E.2d 22, 24 (2007).

The General Assembly has not responded. Our Supreme Court did respond by

promulgating Rule 3.1(e), creating a right to some Anders-type procedures in the

termination of parental rights context. Specifically, where a party typically has no

right to file a separate brief when represented by counsel, our Supreme Court created

a right for an indigent parent to raise issues in a separate brief where that parent’s

counsel has filed a “no-merit” brief. N.C. R. App. 3.1(e). However, our Supreme

Court, in Rule 3.1(e), has not created any right for that parent to receive an Anders-

type review of the record by our Court for consideration of issues not explicitly raised

by the parent or that parent’s counsel.

 Therefore, until our Supreme Court, by rule or holding, or our General

Assembly, by law, creates a right to an Anders-type review of issues not raised by the

parties or their counsel, we must follow our Supreme Court’s Rule 28(a), which limits

the right of appellants to a review of issues actually raised in the briefs.

 This is not to say that we cannot exercise our discretion, pursuant to Rule 2, to

consider issues not properly raised in the briefs, which we do here.

 In our discretion, we have reviewed the transcript and record. Based on our

review, we are unable to find any prejudicial error in the trial court’s order

terminating Father’s parental rights. The termination order contains sufficient

 - 14 -
 IN RE: T.H. & M.H.

 Opinion of the Court

findings of fact supported by clear, cogent, and convincing evidence to support the

conclusion that grounds exist to terminate Father’s parental rights based on neglect.

The trial court’s findings demonstrate that the children were previously adjudicated

neglected, and that Father did not take any steps to correct the conditions that led to

the children being removed from his care, but instead absconded from his probation

with Mother. See In re M.J.S.M., ___ N.C. App. ___, ___, 810 S.E.2d 370, 373 (2018)

(“A parent’s failure to make progress in completing a case plan is indicative of a

likelihood of future neglect.”). The trial court also made appropriate findings in

determining that the termination of Father’s parental rights was in the children’s

best interests. See N.C. Gen. Stat. § 7B-1110(a).

 AFFIRMED.

 Judges TYSON and BERGER concur.

 - 15 -